12/17/2007 MON 17:05

☑ 002/005

1    LATHAM & WATKINS LLP
     Kenneth M. Fitzgerald (Bar No. 142505)
2      Email: Kenneth.Fitzgerald@lw.com
     Robert S. Huie (Bar No. 237374)
3      Email: Robert.Huie@lw.com
   600 West Broadway, Suite 1800
4    San Diego, California 92101-3375
   Telephone: 1.619.236.1234
5    Facsimile: 1.619.696.7419

6    Attorneys for Defendants
   WorldWater & Solar Technologies Corp. and
7    Quentin T. Kelly

8

9                UNITED STATES DISTRICT COURT

10            NORTHERN DISTRICT OF CALIFORNIA

11

12    THOMAS ANDERSON,          CASE NO. CV 07 6372

13            Plaintiff,          NOTICE OF REMOVAL OF ACTION
                                UNDER 28 U.S.C. § 1441(b)
14         v.                   (DIVERSITY)

15    WORLDWATER & SOLAR
   TECHNOLOGIES CORP., a Delaware
16    corporation, formerly known as
   WORLDWATER & POWER CORP., a
17    Delaware corporation; QUENTIN T. KELLY,
   an individual; and DOES 1 through 20,
18    inclusive,

19            Defendants.

20

21

22

23

24

25

26

27

28

E-filing

EMC

1    TO THE CLERK OF THE ABOVE-ENTITLED COURT:

2        PLEASE TAKE NOTICE that defendants WorldWater & Solar Technologies

3    Corp. ("WorldWater") and Quentin T. Kelly ("Kelly") (collectively, "Defendants") hereby

4    remove to this Court the state court action described below.

5        1.    On November 2, 2007, plaintiff Thomas Anderson ("Plaintiff")

6    commenced an action in the Superior Court of the State of California in and for the County of

7    Marin, entitled <u>Anderson v. WorldWater & Solar Technologies Corp. et al.</u>, Case No. CV075201

8    (the "Marin County Action").

9        2.    A true and correct copy of the complaint in the Marin County Action is

10    attached hereto as Exhibit A.

11        3.    True and correct copies of the Civil Case Cover Sheet, Summons, and

12    Notice of Case Management Conference, which together with the complaint comprise all

13    process, pleadings, and orders served in this action, are attached hereto as Exhibit B.

14                    **JURISDICTION**

15        4.    The Marin County Action is a civil action of which this Court has original

16    jurisdiction under 28 U.S.C. § 1332, in that it is a civil action between citizens of different states

17    and the matter in controversy exceeds the sum of $75,000, exclusive of costs and interest.  The

18    Marin County Action may be removed to this Court by Defendants pursuant to the provisions of

19    28 U.S.C. § 1441(b).

20        5.    On information and belief, Plaintiff was at the time of filing the Marin

21    County Action, and still is, a domiciliary and citizen of the State of California.

22        6.    Defendant WorldWater was at the time of the filing of the Marin County

23    Action, and still is, a Delaware corporation with its principal place of business in New Jersey.

24        7.    Defendant Kelly was at the time of the filing of the Marin County Action,

25    and still is, a domiciliary and citizen of the State of New Jersey.

26        8.    The complaint also names as defendants "DOES 1 through 20."  Pursuant

27    to 28 U.S.C. § 1441(a), the citizenship of defendants sued under fictitious names is disregarded

28    for purposes of removal.

1           9.     The amount in controversy exceeds $75,000, exclusive of interest or costs.

2    Plaintiff's complaint alleges that pursuant to an agreement in which he was to provide services to

3    WorldWater, he was to receive certain stock options, and that Defendants refused to honor that

4    agreement.  Plaintiff alleges that, if permitted to exercise the stock options, he would have been

5    able to sell the resulting shares for a total of at least $450,000, and in exercising the options

6    would have paid only $34,920.  Complaint ¶ 25.  Plaintiff therefore alleges that Defendants'

7    refusal of stock options "has cost Anderson $415,080 in compensation to which he was entitled

8    pursuant to the Letter Agreement."  Complaint ¶ 25.  Accordingly, Plaintiff's complaint

9    repeatedly alleges consequential damages in at least the amount of $415,080, under various legal

10    theories.  Complaint ¶¶ 25, 30, 35, 43, 51, 52, 60, 67, 75, 79, 85.

11           10.    Under 28 U.S.C. § 1446(b), the filing of a complaint which states grounds

12    for removability within its four corners begins a 30-day clock in which a defendant may file a

13    notice of removal.  See, e.g., Lovern v. Gen. Motors Corp., 121 F.3d 160, 162 (4th Cir. 1997)

14    (stating that "the grounds for removal must appear on the face of the initial pleading in order for

15    the 30-day clock then to begin to run").  Defendants have not yet been served with any pleading

16    that on its face discloses a removable action.  Plaintiff's complaint contains no allegations stating

17    the citizenship or principal place of business of defendant WorldWater.  Nor does Plaintiff allege

18    the citizenship or domicile of Plaintiff, or of defendant Kelly.  See William W. Schwarzer, et al.,

19    Cal. Practice Guide:  Fed. Civ. Proc. Before Trial § 2:913 (2007) ("Grounds for removal may not

20    appear on the face of the state court complaint.  State pleading rules rarely require allegations as

21    to the parties' citizenship . . . .").  These jurisdictional facts are not furnished by Plaintiff's

22    complaint, but are instead furnished by this Notice of Removal.

23           11.    As required by 28 U.S.C. § 1446(b), this Notice of Removal is filed within

24    one year of commencement of the Marin County Action.

25           12.    On the date of this Notice of Removal, notification of this removal is

26    being served on Plaintiff's attorney of record.

27           13.    On the date of this Notice of Removal, notification of this removal is also

28    being filed in the Marin County Action.

1    14.    A true and correct copy of such notification, to be served on Plaintiff's

2 counsel and filed in the Marin County Action, is attached hereto as Exhibit C.

3    WHEREFORE, the above action now pending in the Superior Court of the State

4 of California, County of Marin, Case No. CV075201, is removed from said state court to this

5 Court, and Defendants pray that this Court proceed in this action pursuant to 28 U.S.C. § 1447,

6 as if this action had been originally filed in this Court, and that further proceedings in the Marin

7 County action be stayed in all respects.

8

9 Dated:  December 17, 2007                          Respectfully submitted,

10                                                  LATHAM & WATKINS LLP
                                                       Kenneth M. Fitzgerald
11                                                     Robert S. Huie

12

13                                              By _____

14                                                  Robert S. Huie
                                                    Attorneys for Defendants
15                                                  WorldWater & Solar Technologies Corp.
                                                    and Quentin T. Kelly

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

1   Robert O. Whyte (SBN 130021)
    Cristina M. Cinco (SBN 197224)
2   Christina A. Dondero (SBN 230616)
    **NIESAR & WHYTE** LLP
3   90 New Montgomery Street, 9th Floor
    San Francisco, California 94105
4   Telephone: (415) 882-5300
    Facsimile: (415) 882-5400
5
6   Attorneys for Plaintiff
    Thomas Anderson

**FILED**

NOV 0 2 2007

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Larson, Deputy

7                    SUPERIOR COURT OF CALIFORNIA

8                         COUNTY OF MARIN

9                       UNLIMITED JURISDICTION

10  THOMAS ANDERSON,                  No. CV075201

11              Plaintiff,            **COMPLAINT FOR DAMAGES**

12  v.

13  WORLDWATER & SOLAR
    TECHNOLOGIES CORP., a Delaware
14  corporation, formerly known as
    WORLDWATER & POWER CORP., a
15  Delaware corporation; QUENTIN T. KELLY,
    an individual; and DOES 1 through 20,
16  inclusive,

17
18              Defendants.

19

20                    **GENERAL ALLEGATIONS**

21  Plaintiff Thomas Anderson (hereinafter referred to as "Anderson") alleges as follows:

22      1.  Anderson is, and at all times herein mentioned was, an individual residing in the

23  County of Marin, State of California.

24      2.  Anderson is informed and believes and on that basis alleges that defendant

25  WorldWater & Solar Technologies Corp. formerly known as WorldWater & Power Corp.

26  (hereinafter referred to as "WorldWater") is, and at all times relevant was, organized and existing

27  under the laws of the State of Delaware and doing business in California and in the County of

28  Marin.

                          COMPLAINT FOR DAMAGES

E 24709v1

3.   Anderson is informed and believes and on that basis alleges that defendant Quentin T. Kelly (hereinafter "Kelly") is an individual residing in the State of New Jersey. Anderson is informed and believes and thereon alleges that Kelly was, and at all relevant times herein mentioned is, the Chairman and CEO of WorldWater.

4.   Anderson is not presently aware of the true names and capacities of defendants sued herein as Does 1 through 20, inclusive. When the true names and capacities of the Doe defendants are ascertained, Anderson will amend this complaint to allege and include that information.

5.   Anderson is informed and believes, and on that basis alleges, that each of the defendants was or is the agent, representative, co-conspirator and/or employee of each other defendants and, in doing the things alleged in this complaint, was acting within the normal course and scope of that relationship. Anderson is further informed and believes, and on that basis alleges, that each of the defendants ratified each of the acts of each other defendant complained of herein. As a result of such relationship or otherwise, each of the defendants was and is responsible is some manner for the occurrences and damages described in this complaint.

## COMMENCEMENT OF PARTIES' RELATIONSHIP

6.   Anderson is informed and believes, and on that basis alleges, that WorldWater is, and at all relevant times herein mentioned was, among other things, an international solar engineering and water management company using high-powered solar technology to provide solutions to problems consistent with water supply and energy demands.

7.   In or about the end of 2001, then Executive Vice President of WorldWater, Dr. Anand Rangarajan (hereinafter "Rangarajan") contacted Anderson expressing an interest in having Anderson work with and assist WorldWater in locating and/or obtaining financing for certain projects using WorldWater's solar powered water pump system known as Aquamax (hereinafter "Aquamax"). Aquamax was, and is, designed to power large off-grid water pumps. Rangarajan then introduced Anderson to Kelly telephonically in order to further those discussions.

8.   Thereafter in or about the end of 2001, Kelly introduced Anderson to WorldWater's

1   then Regional Sales Manager Tom O'Brien (hereinafter "O'Brien"), so that Anderson could

2   accompany O'Brien on certain outside "sales calls" on behalf of WorldWater, which efforts

3   occurred from January 2002 to April 2002. No sales contracts materialized despite O'Brien and

4   Anderson's joint efforts.

5       9. Thereafter, in response to Kelly's request to have Anderson assist WorldWater in

6   finding and closing sales of Aquamax, Anderson introduced WorldWater to a family-owned

7   farm in the San Joaquin Valley by the name of D.T. Locke Ranch. In or about mid-2002,

8   Anderson sold Aquamax to D.T. Locke Ranch, the first ever such sale by WorldWater in the

9   West Coast and the largest system of its kind ever sold at that time. WorldWater's revenue from

10  this sale was approximately $300,000. Anderson also completed the financing for the D.T.

11  Locke Ranch project.

12      10. Thereafter in or about the end of 2002, Anderson assisted WorldWater in closing a

13  sale of Aquamax to Lehr Brothers, Inc. and the Joshua Basin Water District. Lehr Brothers, Inc.

14  operates a food processing facility near Bakersfield, CA, and the Joshua Basin Water District is a

15  public agency in Joshua Tree, CA. The sale to Lehr Brothers, Inc. resulted in $900,000 in

16  revenue to WorldWater. Although Anderson assisted in closing the sale on the Joshua Basin

17  deal, which would have meant a $4.5 million revenue to WorldWater, Joshua Basin cancelled the

18  deal through no fault of Anderson.

19      11. Anderson subsequently arranged the January 2003 Unified Wine & Grape

20  Symposium in Sacramento on WorldWater's behalf. It was at this location that Anderson and

21  Kelly, on behalf of WorldWater, finalized the details of Anderson's agreement with WorldWater

22  regarding work Anderson was to perform on behalf of WorldWater.

23                      **THE LETTER AGREEMENT**

24      12. On or about February 5, 2003 in the City of Mill Valley, Marin County, California,

25  Anderson and WorldWater memorialized their agreement in writing and entered into a certain

26  Letter Agreement (hereinafter referred to as "Letter Agreement") wherein Worldwater and

27  Anderson agreed that Anderson would represent WorldWater in marketing Aquamax to what is

28  commonly known as the "winery industry" throughout the State of California. A true and correct

1  copy of the Letter Agreement is attached hereto as **Exhibit A** and incorporated herein by this

2  reference.

3      13. Pursuant to the Letter Agreement, Anderson was to receive as compensation, among

4  other things, stock options to purchase shares of WorldWater common stock (the "Stock") as

5  follows:

6      a.  For the year 2003:    Options to purchase 60,000 shares at $0.15 per share

7      b.  For the year 2004:    Options to purchase 60,000 shares at $0.132 per share

8      c.  For the year 2005:    Options to purchase 60,000 shares at $0.30 per share.

9  The above-described stock options are sometimes referred to herein collectively as the "Options."

10      **WORLDWATER TREATS ANDERSON AS A WORLDWATER EMPLOYEE**

11      14.    In order to facilitate Anderson's sales efforts, Anderson received business cards

12  from WorldWater in or around April, 2003 identifying him as WorldWater's Northern California

13  Sales Representative. Furthermore, WorldWater listed Anderson as WorldWater's Northern

14  California Sales Representative on WorldWater's website in or around the same time.

15      15.    Moreover, in July 2003, Anderson was listed as the WorldWater contact for the

16  wine industry in an article in a monthly industry magazine known as Wines and Vines.

17      16.    Approximately one year later in or around 2004, WorldWater listed Anderson in

18  the Wines and Vines Directory/Buyer's Guide as its contact for WorldWater during the 2004

19  Unified Wine & Grape Symposium trade show.

20      **ANDERSON HAS PERFORMED HIS OBLIGATIONS PURSUANT TO**

21      **THE LETTER AGREEMENT**

22      17.    Anderson continued to perform his duties throughout 2003 pursuant to the Letter

23  Agreement with WorldWater, including Anderson's efforts to arrange to have an Aquamax

24  demonstration set up at Kendall Jackson Winery, and Anderson's visits to numerous wineries

25  throughout Northern California on WorldWater's behalf.

26      18.    In or around June 2003, WorldWater instructed Anderson to place all prospective

27  sales on hold due to a Pacific Gas & Electric rebate shortage, which rebates were intended for use

28  by WorldWater customers in order to obtain a 50% cost discount toward the purchase of

1    Aquamax.

2        19.        In or around 2004, Anderson spent at least 100 hours attending weekly inside

3    conference calls with WorldWater representatives as well as attending an all-day sales planning

4    meeting on or about October 7, 2004 in Foster City, California, to discuss sales prospects.

5    Anderson also conducted several site visits to Middletown Ranch, an 800-acre agricultural and

6    cattle ranch in Middletown, California, which was WorldWater's best prospect for a sale in

7    Northern California that year.

8        20.        In or about May 2004, WorldWater again advised Anderson to place all sales on

9    hold due to another Pacific Gas & Electric rebate shortage.

10        21.        Notwithstanding Anderson's proven track record of locating sales leads, closing

11    deals, arranging for financing, and organizing trade shows in order to fulfill his obligations,

12    WorldWater has failed and refused, and continues to fail and refuse, to honor and abide by its

13    promises and representations related to the Options pursuant to the Letter Agreement.

14                **ANDERSON DEMANDS OPTIONS AGREEMENT DOCUMENTS**

15        22.        Beginning in April 2003, after several calls from Anderson regarding the status of

16    his Stock pursuant to the Letter Agreement, WorldWater's then Chief Financial Officer Terri Lyn

17    Harris repeatedly reassured Anderson that WorldWater was working on issuing him the Stock,

18    while WorldWater's then Vice President of Operations Chris Sherring (hereinafter "Sherring")

19    advised Anderson "not to worry."

20        23.        Commencing in or about September 2005 and continuing up to and through March

21    2006, Anderson made oral and written demand upon WorldWater for the paperwork necessary to

22    exercise the Options, however, WorldWater has failed, and continues to fail, to provide Anderson

23    with the necessary paperwork to exercise the Options, and WorldWater has failed, and continues

24    to fail, to allow Anderson to complete the process to exercise the Options, thereby precluding

25    Anderson from completing his exercise of the Options.    At no time has WorldWater disavowed

26    its obligations to Anderson under the Letter Agreement, including, its obligations to permit

27    Anderson the right to exercise the Options.

28        24.        On or about February 7, 2006, WorldWater employee Marie Dursin (hereinafter

-5-
COMPLAINT FOR DAMAGES

1  "Dursin") advised Anderson that the Options that were due and owing to him pursuant to the

2  Letter Agreement were not listed in WorldWater's records. In spite of Anderson's efforts to

3  obtain and then exercise the Options pursuant to the Letter Agreement, WorldWater merely gave

4  him the "runaround" as to who at WorldWater could effectively deal with his inquiries. Kelly

5  was not responding to Anderson's inquiries. By way of example:

6       a.    Dursin advised Anderson to direct his inquiries related to the Options to either

7  Kelly, Sherring, or James S. Farrin (hereinafter "Farrin"), WorldWater's interim President in

8  2006.

9       b.    After Anderson contacted Sherring, the latter advised Anderson to speak with

10  Farrin on or about February 14, 2006.

11       c.    After contacting Farrin later in February, 2006, both Farrin and Sherring advised

12  Anderson that only Kelly had the authority to deal with the Options.

13       25.    From the time WorldWater and Anderson entered into the Letter Agreement, the

14  Stock has traded as high as $2.515 per share. Had WorldWater honored its obligations pursuant

15  to the Letter Agreement and allowed Anderson to exercise the Options, Anderson would have

16  been able to effect a sale thereof at or about $2.50 per share or for a total of at least $450,000.

17  Furthermore, had WorldWater allowed Anderson to exercise the Options, the total purchase price

18  that Anderson would pay in exercising the Options would be $34,920. Consequently,

19  WorldWater's refusal and failure to provide Anderson with the necessary paperwork to exercise

20  the Options, allow Anderson to complete the process of exercising the Options, and thereby

21  complete his exercise of the Options and subsequent sale of the Stock issuable upon such exercise

22  has cost Anderson $415,080 in compensation to which he was entitled pursuant to the Letter

23  Agreement.

24  **FIRST CAUSE OF ACTION**
(Breach of Contract – Against WorldWater)

25

26       26.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 25

inclusive, of the complaint as though fully set forth herein.

27

28

27.    As set forth above, Anderson alleges WorldWater and Does 1-20, and each of them, entered into the Letter Agreement with Anderson.

28.    Anderson duly performed all conditions, covenants, and promises required to be performed on his part in accordance with the terms and conditions of the Letter Agreement, save and except for those obligations that have been excused or waived by WorldWater and Does 1-20's joint and several acts and/or omissions. More specifically and among other things, Anderson went on certain outside sales calls and numerous site visits, closed and financed WorldWater's first sale in the West Coast and sold the largest system of its kind ever to be sold at that time, assisted in closing other sales, and arranged trade shows and demonstrations on behalf of WorldWater and in furtherance of his obligations pursuant to the Letter Agreement.

29.    Anderson is informed and believes, and on that basis alleges, that WorldWater and Does 1-20, and each of them, breached the Letter Agreement by, among other things, failing and refusing to provide Anderson with the necessary paperwork to exercise the Options, and failing and refusing to allow Anderson to complete his exercise of the Options, thereby precluding Anderson from completing his exercise of the Options.

30.    As a proximate and legal result of the contractual breach by WorldWater and Does 1-20, and each of them, Anderson has suffered damages in an amount to be proven at trial, but believed to be at least $415,080 together with accrued and unpaid interest thereon at the legal rate. Anderson will seek leave to amend this complaint to allege the precise amount of such damage when the same has been ascertained.

WHEREFORE, Anderson prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### (Breach of the Implied Covenant of Good Faith and Fair Dealing – Against WorldWater)

31.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 30 inclusive, of the complaint as though fully set forth herein.

32.    Implied in the Letter Agreement is a covenant of good faith and fair dealing wherein WorldWater and Does 1-20, and each of them, agreed that no one would do any acts that would have the effect of frustrating or preventing any party's enjoyment of the benefits of

-7-

1  exercising the Options as reflected in the Letter Agreement.

2      33.    WorldWater and Does 1-20, and each of them, breached the covenant of good faith
3  and fair dealing by, among other things, failing and refusing to allow Anderson to exercise the
4  Options by failing and refusing to provide the necessary paperwork to exercise the Options and
5  failing and refusing to allow Anderson to complete his exercise of the Options.

6      34.    WorldWater and Does 1-20, and each of them, were in a superior position to
7  Anderson by, among other things, its possession of the Stock and the paperwork Anderson
8  needed in order to exercise the Options.  Anderson was particularly vulnerable in that Anderson
9  placed substantial trust in the representations made to him by said defendants when entering into
10  the Letter Agreement with said defendants, who persuaded him that he had, and would have, the
11  right to exercise stock options to purchase shares of WorldWater common stock as follows:

12      a.  For the year 2003:  Options to purchase 60,000 shares at $0.15 per share

13      b.  For the year 2004:  Options to purchase 60,000 shares at $0.132 per share

14      c.  For the year 2005:  Options to purchase 60,000 shares at $0.30 per share.

15      35.    As a direct and proximate result of WorldWater and Does 1-20's, and each of their
16  breach of the covenant of good faith and fair dealing, Anderson has suffered damages in an
17  amount to be proven at trial, but believed to be at least $415,080 together with accrued and
18  unpaid interest thereon at the legal rate.  Anderson will seek leave to amend this complaint to
19  allege the precise amount of such damage when the same has been ascertained.

20      WHEREFORE, Anderson prays for relief as hereinafter set forth.

21              **THIRD CAUSE OF ACTION**
        **(Fraud -Concealment and Suppression – Against All Defendants)**
22

23      36.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 35
24  inclusive, of the complaint as though fully set forth herein.

25      37.    At the time Anderson executed the Letter Agreement, WorldWater, Kelly, and
26  Does 1-20 and each of them, represented that Anderson had, and would have, the right to exercise
27  stock options to purchase shares of WorldWater common stock as follows:

28      a.    For the year 2003:  Options to purchase 60,000 shares at $0.15 per share

-8-

1        b.     For the year 2004:  Options to purchase 60,000 shares at $0.132 per share

2        c.     For the year 2005:  Options to purchase 60,000 shares at $0.30 per share.

3        38.     Anderson reasonably relied upon WorldWater, Kelly, and Does 1-20's and each of

4 their representation that Anderson had, and would have, the right to exercise the Options.  Among

5 other things, said defendants repeatedly reassured Anderson that they were working on issuing

6 the Stock to him pursuant to the Letter Agreement, held Anderson out to be a WorldWater

7 representative by providing him with business cards and listing him as a contact for WorldWater

8 on WorldWater's website, at trade shows, and on trade publications, included Anderson in sales

9 meetings and conference calls to discuss sales prospects, and encouraged Anderson to locate sales

10 leads, close deals, arrange for financing, and organize trade shows and demonstrations on

11 WorldWater's behalf.

12        39.     At the time of entering into the Letter Agreement, WorldWater, Kelly, and Does 1-

13 20 falsely and fraudulently represented to Anderson that Anderson had, and would have, the right

14 to exercise the Options.  In addition, said defendants concealed and suppressed from Anderson

15 their secret intention of refusing to allow Anderson to exercise the Options.

16        40.     WorldWater, Kelly, and Does 1-20, and each of them committed acts of fraud by,

17 among other things, inducing Anderson to enter into the Letter Agreement with the secret

18 intention of later disavowing that Anderson had, and would have, the right to exercise the

19 Options, thereby depriving Anderson of his rightful ownership interest in the Stock and his right

20 to exercise the Options. These secret intentions of said defendants and each of them, were

21 concealed and suppressed from Anderson.

22        41.     At the time of WorldWater, Kelly, and Does 1-20's and each of their secret

23 intentions of concealment and suppression of facts from Anderson, Anderson did not know the

24 same. Had Anderson known the true facts, he would not have entered into the Letter Agreement

25 with said defendants and would not have rendered any performance thereunder.  Anderson's

26 reliance on said defendants' false representations was reasonable and justified in that said

27 defendants represented that Anderson had, and would have, the right to exercise the Options.

28        42.     As a direct and proximate result of WorldWater, Kelly, and Does 1-20 and each of

1    their misrepresentations, Anderson has suffered damages in an amount to be proven at trial, but

2    believed to be in excess of the jurisdictional minimum of the Court together with accrued and

3    unpaid interest thereon at the legal rate. Anderson will seek leave to amend this complaint to

4    allege the precise amount of such damage when the same has been ascertained.

5        43.    As a direct and proximate result of WorldWater, Kelly, and Does 1-20's

6    concealment and suppression, Anderson has suffered damages in an amount to be proven at trial,

7    but believed to be at least $415,080 together with accrued and unpaid interest thereon at the legal

8    rate. Anderson will seek leave to amend this complaint to allege the precise amount of such

9    damage when the same has been ascertained.

10       44.    The aforementioned acts of WorldWater, Kelly, and Does 1-20 and each of them,

11   were wanton, malicious, and oppressive and were undertaken in conscious disregard of

12   Anderson's rights and justify an award of exemplary and punitive damages.

13       WHEREFORE, Anderson prays for relief as hereinafter set forth.

14                              **FOURTH CAUSE OF ACTION**
                 **(Fraud -Intentional Misrepresentation – Against All Defendants)**
15

16       45.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 44

17   inclusive, of the complaint as though fully set forth herein.

18       46.    At the time Anderson executed the Letter Agreement, WorldWater, Kelly, and

19   Does 1-20 and each of them, represented that Anderson had, and would have, the right to exercise

20   stock options to purchase shares of WorldWater common stock as follows:

21       a.    For the year 2003: Options to purchase 60,000 shares at $0.15 per share

22       b.    For the year 2004: Options to purchase 60,000 shares at $0.132 per share

23       c.    For the year 2005: Options to purchase 60,000 shares at $0.30 per share.

24       47.    Anderson reasonably relied upon WorldWater, Kelly, and Does 1-20's and each of

25   their representation that Anderson had, and would have, the right to exercise the Options. Among

26   other things, said defendants repeatedly reassured Anderson that they were working on issuing

27   the Stock to him pursuant to the Letter Agreement, held Anderson out to be a WorldWater

28   representative by providing him with business cards and listing him as a contact for WorldWater

1     on WorldWater's website, at trade shows, and on trade publications, included Anderson in sales

2     meetings and conference calls to discuss sales prospects, and encouraged Anderson to locate sales

3     leads, close deals, arrange for financing, and organize trade shows and demonstrations on

4     WorldWater's behalf.

5         48.     At the time WorldWater, Kelly, and Does 1-20 and each of them made the

6     representation to Anderson that Anderson had, and would have, the right to exercise the Options,

7     said defendants had no reasonable ground for believing the representation to be true in that they

8     had no intention of allowing Anderson to exercise the Options.

9         49.     WorldWater, Kelly, and Does 1-20, and each of them committed acts of fraud by,

10     among other things, inducing Anderson to enter into the Letter Agreement and act in reliance on

11     these representations in the manner hereafter alleged, or with the expectation that Anderson

12     would so act. Anderson was not aware at the time these representations were made by said

13     defendants that they were false.

14         50.     WorldWater, Kelly, and Does 1-20 committed acts of fraud by, among other

15     things, failing and refusing to allow Anderson to exercise the Options by failing and refusing to

16     provide Anderson with the necessary paperwork to exercise the Options, and failing and refusing

17     to allow Anderson to complete his exercise of the Options, thereby precluding Anderson from

18     exercising the Options.

19         51.     As a direct and proximate result of WorldWater, Kelly, and Does 1-20's

20     misrepresentations, Anderson has suffered damages in an amount to be proven at trial, but

21     believed to be at least $415,080 together with accrued and unpaid interest thereon at the legal

22     rate. Anderson will seek leave to amend this complaint to allege the precise amount of such

23     damage when the same has been ascertained.

24         52.     As a direct and proximate result of WorldWater, Kelly, and Does 1-20's

25     concealment and suppression, Anderson has suffered damages in an amount to be proven at trial,

26     but believed to be at least $415,080 together with accrued and unpaid interest thereon at the legal

27     rate. Anderson will seek leave to amend this complaint to allege the precise amount of such

28     damage when the same has been ascertained.

53.    The aforementioned acts of WorldWater, Kelly, and Does 1-20 and each of them, were wanton, malicious, and oppressive and were undertaken in conscious disregard of Anderson's rights and justify an award of exemplary and punitive damages.

WHEREFORE, Anderson prays for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
**(Fraud -False Promise – Against All Defendants)**

54.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 53 inclusive, of the complaint as though fully set forth herein.

55.    At the time Anderson executed the Letter Agreement, WorldWater, Kelly, and Does 1-20 and each of them, represented that Anderson had, and would have, the right to exercise stock options to purchase shares of WorldWater common stock as follows:

a.    For the year 2003:  Options to purchase 60,000 shares at $0.15 per share

b.    For the year 2004:  Options to purchase 60,000 shares at $0.132 per share

c.    For the year 2005:  Options to purchase 60,000 shares at $0.30 per share.

56.    Anderson reasonably relied upon WorldWater, Kelly, and Does 1-20's and each of their representation that Anderson had, and would have, the right to exercise the Options.  Among other things, said defendants repeatedly reassured Anderson that they were working on issuing the Stock to him pursuant to the Letter Agreement, held Anderson out to be a WorldWater representative by providing him with business cards and listing him as a contact for WorldWater on WorldWater's website, at trade shows, and on trade publications, included Anderson in sales meetings and conference calls to discuss sales prospects, and encouraged Anderson to locate sales leads, close deals, arrange for financing, and organize trade shows and demonstrations on WorldWater's behalf.

57.    At the time WorldWater, Kelly, and Does 1-20 made this representation, said defendants had no reasonable ground for believing the representation to be true in that said defendants had no intention of allowing Anderson to exercise the Options.

58.    WorldWater, Kelly, and Does 1-20 made this representation with the intention of inducing Anderson to act in reliance on this representation in the manner hereafter alleged, or

-12-

1  with the expectation that Anderson would so act.  Anderson was not aware at the time this

2  representation was made by said defendants that the representation was false.

3      59.    WorldWater, Kelly, and Does 1-20 committed acts of fraud by, among other

4  things, failing and refusing to allow Anderson to exercise the Options by failing and refusing to

5  provide Anderson with the necessary paperwork to exercise the Options, and failing and refusing

6  to allow Anderson to complete his exercise of the Options, thereby precluding Anderson from

7  exercising the Options.

8      60.    As a direct and proximate result of WorldWide, Kelly, and Does 1-20's

9  misrepresentation, Anderson has suffered damages in an amount to be proven at trial, but

10  believed to be at least $415,080 together with accrued and unpaid interest thereon at the legal

11  rate.  Anderson will seek leave to amend this complaint to allege the precise amount of such

12  damage when the same has been ascertained.

13      61.    The aforementioned acts of WorldWater, Kelly, and Does 1-20 and each of them,

14  were wanton, malicious, and oppressive and were undertaken in conscious disregard of

15  Anderson's rights and justify an award of exemplary and punitive damages.

16      WHEREFORE, Anderson prays for relief as hereinafter set forth.

17                    **SIXTH CAUSE OF ACTION**
                **(Negligent Misrepresentation – Against All Defendants)**
18

19      62.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 61

20  inclusive, of the complaint as though fully set forth herein.

21      63.    At the time Anderson executed the Letter Agreement, WorldWater, Kelly, and

22  Does 1-20 and each of them, represented that Anderson had, and would have, the right to exercise

23  stock options to purchase shares of WorldWater common stock as follows:

24      a.    For the year 2003:  Options to purchase 60,000 shares at $0.15 per share

25      b.    For the year 2004:  Options to purchase 60,000 shares at $0.132 per share

26      c.    For the year 2005:  Options to purchase 60,000 shares at $0.30 per share.

27      64.    Anderson reasonably relied upon WorldWater, Kelly, and Does 1-20's and each of

28  their representation that Anderson had, and would have, the right to exercise the Options.  Among

1   other things, said defendants repeatedly reassured Anderson that they were working on issuing
2   the Stock to him pursuant to the Letter Agreement, held Anderson out to be a WorldWater
3   representative by providing him with business cards and listing him as a contact for WorldWater
4   on WorldWater's website, at trade shows, and on trade publications, included Anderson in sales
5   meetings and conference calls to discuss sales prospects, and encouraged Anderson to locate sales
6   leads, close deals, arrange for financing, and organize trade shows and demonstrations on
7   WorldWater's behalf.

8       65.     At the time WorldWater, Kelly, and Does 1-20 made this representation, said
9   defendants knew or should have known that said representation was false in that said defendants
10  had no intention of allowing Anderson to exercise the Options.

11      66.     As a proximate result of WorldWater, Kelly, and Does 1-20's misrepresentation,
12  Anderson was induced to act in reliance on this misrepresentation in the manner hereafter alleged,
13  or with the expectation that Anderson would so act.

14      67.     As a direct and proximate result of WorldWater, Kelly, and Does 1-20's
15  misrepresentations, Anderson has suffered damages in an amount to be proven at trial, but
16  believed to be at least $415,080 together with accrued and unpaid interest thereon at the legal
17  rate. Anderson will seek leave to amend this complaint to allege the precise amount of such
18  damage when the same has been ascertained.

19      WHEREFORE, Anderson prays for relief as hereinafter set forth.

20                          **SEVENTH CAUSE OF ACTION**
21  **(Material Misrepresentation in Securities Transaction – Against Defendant WorldWater)**

22      68.     Anderson alleges and incorporates herein by reference Paragraphs 1 through 67
23  inclusive, of the complaint as though fully set forth herein.

24      69.     Pursuant to the Letter Agreement, Anderson was to receive as compensation,
25  among other things, stock options to purchase shares of WorldWater common stock as follows:

26      a.  For the year 2003:     Options to purchase 60,000 shares at $0.15 per share
27      b.  For the year 2004:     Options to purchase 60,000 shares at $0.132 per share
28      c.  For the year 2005:     Options to purchase 60,000 shares at $0.30 per share.

-14-

1    Commencing in or about September 2005 and continuing up to and through March 2006,

2    Anderson made oral and written demand upon WorldWater, Kelly, and Does 1-20 for the

3    paperwork and for guidance on the process necessary to exercise the Options, however, said

4    defendants have refused and failed, and continues to refuse and fail, to allow Anderson to

5    exercise the Options and subsequently complete and/or effect a sale.    Furthermore, said

6    defendants have never disavowed their obligations to Anderson under the Letter Agreement,

7    including, their obligations with respect to the Options.    Moreover, said defendants' prior

8    representation that Anderson would be compensated in the form of Stock Options was apparently

9    maintained, but subsequently proved to be false as a result of said defendants' failure, omission,

10    and material wrongdoing as herein alleged.

11         70.    Additionally, when said defendants entered into and executed the Letter

12    Agreement, they did not intend to abide by their promise and representation that Anderson had,

13    and would have, the right to exercise stock options to purchase shares of WorldWater common

14    stock. Had said defendants intended to honor and abide by their representations under the Letter

15    Agreement when they entered into said agreement, WorldWater would have sought qualification

16    of the Options pursuant to California Corporations Code Section 25110 of the Corporate

17    Securities Law of 1968, which provides:

18         It is unlawful for any person to offer or sell in this state any security in an issuer
           transaction ..., unless such sale has been qualified under Section 25111, 25112 or
19         25113 ... or unless such security or transaction is exempted or not subject to
           qualification under Chapter 1 (commencing with 25110) of this part.
20

21    "Security" is defined as an "option, or privilege on any security" under California Corporations

22    Code Section 25019 of the Corporate Securities Law of 1968.  WorldWater has failed to comply

23    with the qualifications requirement under Section 25110 with respect to the Options.

24         71.    Furthermore, the grant of the Options was not exempt from the qualification

25    requirement.  Among the conditions that must be met in order that the Options be exempt from

26    qualification under Section 25110, California Corporations Code Section 25102(o) of the

27    Corporate Securities Law of 1968 requires that "the issuer file[] a notice of transaction in

28    accordance with rules adopted by the commissioner no later than 30 days after the initial issuance

-15-

1   of any security under that plan, accompanied by a filing fee as prescribed by subdivision (y) of

2   Section 25608." WorldWater failed to comply with the notice requirement in order for the

3   Options to be exempt from the qualification requirement of Section 25110. Such failure with the

4   qualifications or notice requirement demonstrates WorldWater's lack of intent to abide by its

5   representations and obligations under the Letter Agreement when it entered into said agreement

6   with respect to the Options.

7         72.     Anderson is informed and believes and thereon alleges that in or about 2003, 2004,

8   and 2005, Anderson had, and would have, the right to exercise the stock options to purchase

9   shares of WorldWater common stock as follows:

10              a.       For the year 2003:  Options to purchase 60,000 shares at $0.15 per share

11              b.       For the year 2004:  Options to purchase 60,000 shares at $0.132 per share

12              c.       For the year 2005:  Options to purchase 60,000 shares at $0.32 per share.

13  However, in spite of numerous written and verbal requests by Anderson for paperwork and

14  instructions on exercising the Options, WorldWater, Kelly, and Does 1-20 has refused and failed,

15  and continues to refuse and fail, to respond to Anderson's requests and otherwise prevented

16  Anderson from exercising the Options by refusing and failing to provide Anderson with the

17  necessary paperwork and refusing and failing to allow Anderson to complete the process in his

18  exercise of the Options.

19        73.     Anderson is further informed and thereon alleges that had WorldWater, Kelly, and

20  Does 1-20 honored and performed their obligations under the Letter Agreement, Anderson would

21  have been able to sell his 180,000 shares of Stock at or about the trading price per share of the

22  Stock on the over the counter BB Exchange at the time he would effect the sale of such shares.

23        74.     As a result of WorldWater, Kelly, and Does 1-20's material misrepresentation as

24  alleged herein, said defendants are liable to Anderson, who is entitled, in lieu of recission, to sue

25  for damages as calculated at the value of the Stock on the over the counter BB Exchange as a

26  result of said defendants' failure and refusal to allow Anderson to exercise the Options and

27  subsequently effect a sale.

28        75.     The value of the securities that Anderson would receive upon exercise of all of the

-16-

1    Options is manifested by the price per share of the Stock in over the counter BB Exchange trading

2    reports. Had WorldWater, Kelly, and Does 1-20 honored and performed their obligations under

3    the Letter Agreement, Anderson would have been able to sell his 180,000 shares of Stock at the

4    price per share value of the Stock on the over the counter BB Exchange, and in that regard,

5    Anderson has suffered damages in an amount to be proven at trial, but believed to be at least

6    $415,080 together with accrued and unpaid interest thereon at the legal rate. Anderson will seek

7    leave to amend this complaint to allege the precise amount of such damage when the same has

8    been ascertained.

9        WHEREFORE, Anderson prays for relief as hereinafter set forth.

10                          **EIGHTH CAUSE OF ACTION**

11    **(Joint and Several Liability of Management Principals – Against Defendant Kelly)**

12        76.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 75

13    inclusive, of the complaint as though fully set forth herein.

14        77.    As alleged at paragraph 13, pursuant to the Letter Agreement, Anderson was to

15    receive as compensation, among other things, stock options to purchase shares of WorldWater

16    common stock as follows:

17        a.  For the year 2003:    Options to purchase 60,000 shares at $0.15 per share

18        b.  For the year 2004:    Options to purchase 60,000 shares at $0.132 per share

19        c.  For the year 2005:    Options to purchase 60,000 shares at $0.30 per share.

20        78.    Kelly was, at the time of the acts alleged herein, a principal member in the

21    management of WorldWater in that Kelly was the Chairman and CEO of WorldWater, who

22    materially aided in the material misrepresentations described more particularly at paragraphs 69-

23    75, which constituted the securities transaction violations hereinafter complained of, in that,

24    among other things, despite Kelly receiving numerous written and verbal requests by Anderson

25    for paperwork and instructions on exercising the Options, Kelly, as Chairman and CEO of

26    WorldWater, has refused and failed, and continues to refuse and fail, to respond to Anderson's

27    requests and otherwise prevented Anderson from exercising the Options by refusing and failing to

28    provide Anderson with the necessary paperwork and refusing and failing to allow Anderson to

1   complete the process in his exercise of the Options.

2       79.    The value of the securities that Anderson would receive upon exercise of all of the

3   Options is manifested by the price per share of the Stock in over the counter BB Exchange trading

4   reports. Had WorldWater, Kelly, and Does 1-20 honored and performed their obligations under

5   the Letter Agreement, Anderson would have been able to sell his 180,000 shares of Stock at the

6   price per share value of the Stock on the over the counter BB Exchange, and in that regard,

7   Anderson has suffered damages in an amount to be proven at trial, but believed to be at least

8   $415,080 together with accrued and unpaid interest thereon at the legal rate. Anderson will seek

9   leave to amend this complaint to allege the precise amount of such damage when the same has

10  been ascertained.

11      WHEREFORE, Anderson prays for relief as hereinafter set forth.

12                          **NINTH CAUSE OF ACTION**
13        (Joint and Several Liability of Materially Assisting Person – Against Defendant Kelly)

14      80.    Anderson alleges and incorporates herein by reference Paragraphs 1 through 79

15  inclusive, of the complaint as though fully set forth herein.

16      81.    Pursuant to the Letter Agreement, Anderson was to receive as compensation,

17  among other things, stock options to purchase shares of WorldWater common stock as follows:

18      a.  For the year 2003:    Options to purchase 60,000 shares at $0.15 per share

19      b.  For the year 2004:    Options to purchase 60,000 shares at $0.132 per share

20      c.  For the year 2005:    Options to purchase 60,000 shares at $0.30 per share.

21      82.    Defendant Kelly is, and at all times herein mentioned was, the Chairman and CEO

22  of WorldWater.

23      83.    At the time of the acts alleged herein at paragraphs 69-75 and 77-79, and in spite

24  of numerous requests by Anderson for paperwork and instructions on exercising the Options,

25  Kelly materially assisted in representing and promising to Anderson that Anderson had, and

26  would have, the right to exercise the Options and subsequently complete and/or effect a sale.

27  Moreover, Kelly materially assisted in refusing and failing, and continuing to refuse and fail, to

28

1    allow Anderson to exercise the Options and subsequently complete and/or effect a sale.

2        84.    Defendant Kelly acted with intent to deceive or defraud.

3        85.    The value of the securities that Anderson would receive upon exercise of all of the

4    Options is manifested by the price per share of the Stock in over the counter BB Exchange trading

5    reports. Had WorldWater, Kelly, and Does 1-20 honored and performed their obligations under

6    the Letter Agreement, Anderson would have been able to sell his 180,000 shares of Stock at the

7    price per share value of the Stock on the over the counter BB Exchange, and in that regard,

8    Anderson has suffered damages in an amount to be proven at trial, but believed to be at least

9    $415,080 together with accrued and unpaid interest thereon at the legal rate.  Anderson will seek

10    leave to amend this complaint to allege the precise amount of such damage when the same has

11    been ascertained.

12        WHEREFORE, Anderson prays for judgment against WorldWater, Kelly, and Does 1

13    through 20, inclusive, as set forth below:

PRAYER

14

15    1.    On the **First Cause of Action Against WorldWater**:

16    a.    Damages in the principal sum to be determined at the time of trial but in a sum no less

17        than $415,080 or such other amount that is determined to be in excess of the

18        jurisdictional minimum of the Court;

19    b.    Interest thereon at the legal rate from the date of breach, until paid;

20    2.    On the **Second Cause of Action Against WorldWater**:

21    a.    Damages in the principal sum to be determined at the time of trial but in a sum no less

22        than $415,080 or such other amount that is determined to be in excess of the

23        jurisdictional minimum of the Court;

24    b.    Interest thereon at the legal rate from the date of breach, until paid;

25

26

27

28

-19-

3. On the **Third, Fourth, and Fifth Causes of Action Against All Defendants:**

a. Damages in the principal sum to be determined at the time of trial but in a sum no less than $415,080 or such other amount that is determined to be in excess of the jurisdictional minimum of the Court; and

b. Punitive damages in an amount to be determined at the time of trial;

c. For attorneys' fees as an item of damage pursuant to the *Tort of Another Doctrine*;

4. On the **Sixth Cause of Action Against All Defendants:**

a. Damages in the principal sum to be determined at the time of trial but in a sum no less than $415,080 or such other amount that is determined to be in excess of the jurisdictional minimum of the Court;

b. For attorneys' fees as an item of damage pursuant to the *Tort of Another Doctrine*;

5. On the **Seventh Cause of Action Against WorldWater:**

Damages in the amount equal to the difference between:

a. the amount Anderson could have received upon sale of the securities, plus interest at the legal rate; and

b. the price of the securities Anderson would have paid upon exercise of all the Options;

c. For attorneys' fees as an item of damage pursuant to the *Tort of Another Doctrine*;

6. On the **Eighth and Ninth Causes of Action Against Kelly:**

Damages in the amount equal to the difference between:

a. the amount Anderson could have received upon sale of the securities, plus interest at the legal rate; and

b. the price of the securities Anderson would have paid upon exercise of all the Options;

c. For attorneys' fees as an item of damage pursuant to the *Tort of Another Doctrine*;

///
///
///
///
///

1     7.    On All Causes of Action against all Defendants:

2     a.  For costs of suit and expenses incurred herein; and

3     b.  For such other and further relief as the Court may deem just and proper.

5    DATED: November ___, 2007     NIESAR & WHYTE LLP

By: _Cristina M. Cinco_

Cristina M. Cinco
Attorneys for Plaintiff
Thomas Anderson

COMPLAINT FOR DAMAGES

# EXHIBIT A

Oct 30 07 09:36a    Cristina M. Cinco                                    415-626-1270         p.2



- Solar Water Pumps
- Solar Electrical Systems
- Water Management

*Powered by the sun and
WorldWater technology*

February 5, 2003

Mr. Thomas Anderson

301 Sycamore Ave.

Mill Valley, CA 94941

Dear Tom:

This will confirm our Agreement and understanding that, effective January 1, 2003, you will represent WorldWater Corp. (WWC or the Company) in marketing the Company's products to the winery industry (the Market) throughout the State of California (the Territory).

Your responsibilities will include all aspects of opening and, in conjunction with WWC authorization and support, following through and closing the sale to your Market. As consideration for a successful sale, you will be paid according to the following formula:

1. A commission of 1% (one per cent) of the gross sale price received in good funds by WWC, paid within 15 days of receipt of those funds, up to a sale price of $5 million; ¾ % (three quarters of one per cent) above $5 million up to a sale price of $10 million; ½% (one-half of one per cent) above $10 million up to $25 million; ¼% (one-quarter of one per cent) above $25 million.

   If, however, your participation in the sale is limited to an introduction or referral and does not include closing the transaction, as judged by the California sales manager's office and WWC headquarters, your commission will be half of the above percentages.

2. Stock Options of 60,000 per year, vested at 5,000 per month as long as your representative status remains with the Company, with annual consideration of increases by the Company Compensation Committee. Stock Options will be granted in accordance with the WWC 1999 Stock Option Plan, which plan currently calls for an exercise price of $0.15 (fifteen cents) per share of common stock of the Company (WWAT.OB  OTC BB), with the market price on each anniversary date thereafter determining the exercise price of future grants.

3. Reimbursement of all reasonable and customary expenses incurred by you on Worldwater business.

4. Bonuses will be considered at the end of each year based on the profits achieved by your sector.

WORLDWATER® Corp. • Pennington Business Park • 55 Route 31 South • Pennington NJ 08534 USA • Tel:609-818-0700 • Fax: 609-818-0720
Web Page: http://www.worldwater.com• e-mail: pump@worldwater.com • NASDAQ symbol: WWAT

Oct 30 07 09:38a    Cristina M. Cinco                    415-626-1270              p.3

Term of this Agreement is 3 (three) years, with automatic extensions on mutual agreement of the parties. This Agreement may be terminated by either party upon 60 days written notice, but any sale started by you but not concluded will be considered your sale for a period of 12 months after cessation of your representation, in which case you will be paid a commission of ½ (one-half) of your normal commission had the sale been closed under your representation. Stock Options cease upon termination.

During and for a period of one year after your representation status with WWC, you agree to keep confidential any and all confidential or non-public Company documents, trade secrets and other information including, but not limited to, patent work, engineering drawings, product designs, R&D results, client lists, pricing strategy, product cost data, proprietary technical information, corporate policies and procedures, and corporate marketing and financial plans and strategies. In the event your representation ceases for any reason, all documents owned by the Company shall be returned to the Company.

It is understood and agreed that you may assign your stock options earned to whomever you designate. It is also understood and agreed that you may be asked or may volunteer to participate in sales or projects other than those involving your Market, or, because of geographic or other reasons affecting sales in your Market and Territory, you do not start or close a particular sale and WWC or other individuals are required to participate to initiate or conclude the sale, your commissions will be negotiated on an individual basis.

If this represents your understanding of our Agreement, please sign below where designated. WorldWater Corp. welcomes your association.

Yours truly,

Chris Sherring
Director of Operations

Agreed: Tom Anderson

Tom Anderson

# EXHIBIT B

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| ROBERT O. WHYTE (SBN 130021)<br>CRISTINA M. CINCO (SBN 197224)<br>CHRISTINA A. CONDERO (SBN 230616)<br>90 New Montgomery Street, 9th Floor<br>San Francisco, CA 94105<br>TELEPHONE NO.: (415) 882-5300    FAX NO.: (415) 882-5400<br>ATTORNEY FOR (Name): THOMAS ANDERSON | RECEIVED<br>MARIN COUNTY<br>SUPERIOR COURT<br><br>2007 NOV -2 A 10: 15 |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF MARIN
STREET ADDRESS: MARIN COUNTY - Hall of Justice
MAILING ADDRESS: 3501 Civic Center Dr., Rm. 116
CITY AND ZIP CODE: San Rafael, CA 94903
BRANCH NAME:

CASE NAME: THOMAS ANDERSON v. WORLDWATER & SOLAR TECHNOLOGIES CORP., et al.

| CIVIL CASE COVER SHEET<br>[X] Unlimited    [ ] Limited<br>(Amount    (Amount<br>demanded    demanded is<br>exceeds $25,000)    $25,000 or less) | Complex Case Designation<br>[ ] Counter    [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 1811) | CASE NUMBER: CV075201<br>JUDGE: Dufee<br>DEPT: |
|---|---|---|

Items 1–5 below must be completed (see instructions on page 2).

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [X] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 1800–1812) |
| [ ] Uninsured motorist (46) | [ ] Collections (09) | [ ] Antitrust/Trade regulation (03) |
| Other PI/PD/WD (Personal Injury/Property | [ ] Insurance coverage (18) | [ ] Construction defect (10) |
| Damage/Wrongful Death) Tort | [ ] Other contract (37) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | Real Property | [ ] Securities litigation (28) |
| [ ] Product liability (24) | [ ] Eminent domain/Inverse | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | condemnation (14) | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | [ ] Wrongful eviction (33) | above listed provisionally complex case |
| Non-PI/PD/WD (Other) Tort | [ ] Other real property (26) | types (41) |
| [ ] Business tort/unfair business practice (07) | Unlawful Detainer | Enforcement of Judgment |
| [ ] Civil rights (08) | [ ] Commercial (31) | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Residential (32) | Miscellaneous Civil Complaint |
| [ ] Fraud (16) | [ ] Drugs (38) | [ ] RICO (27) |
| [ ] Intellectual property (19) | Judicial Review | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | [ ] Asset forfeiture (05) | Miscellaneous Civil Petition |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Petition re: arbitration award (11) | [ ] Partnership and corporate governance (21) |
| Employment | [ ] Writ of mandate (02) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Other judicial review (39) | |
| [ ] Other employment (15) | | |

2. This case [ ] is [X] is not complex under rule 1800 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties    d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel    e. [ ] Coordination with related actions pending in one or more courts
   issues that will be time-consuming to resolve    in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence    f. [ ] Substantial postjudgment judicial supervision

3. Type of remedies sought (check all that apply):
   a. [X] monetary    b. [ ] nonmonetary; declaratory or injunctive relief    c. [X] punitive

4. Number of causes of action (specify):

5. This case [ ] is [X] is not a class action suit.

6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015).

Date:

ROBERT O. WHYTE (SBN 130021)                    Cristina M. Cinco for
(TYPE OR PRINT NAME)                              (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

NOTICE
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 201.8.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 1800 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 (Rev. January 1, 2005) | CIVIL CASE COVER SHEET | Legal<br>Solutions<br>Plus | Cal. Rules of Court, rules 201.8, 1800–1812;<br>Standards of Judicial Administration, § 19 |
|---|---|---|---|

# SUMMONS
## (CITACION JUDICIAL)

SUM-100

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
WORLDWATER & SOLAR TECHNOLOGIES CORP., a Delaware
corporation, formerly known as WORLDWATER & POWER
CORP., a Delaware corporation; QUENTIN T. KELLY, an
individual and DOES 1 through 20, inclusive,



FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

# FILED

NOV 0 2 2007

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Larson, Deputy

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
THOMAS ANDERSON

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association.

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.courtinfo.ca.gov/selfhelp/espanol/), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.courtinfo.ca.gov/selfhelp/espanol) o poniéndose en contacto con la corte o el colegio de abogados locales.*

| The name and address of the court is: *(El nombre y dirección de la corte es):* | CASE NUMBER: *(Número del Caso):* CV075201 |
|---|---|
| Superior Court of California Hall of Justice - County of Marin 3501 Civic Center Dr., Rm. 116 San Rafael, CA 94903 | |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Robert O. Whyte SBN 130021          (415) 882-5300T (415)882-5400F
Niesar & Whyte LLP
90 New Montgomery St., 9th Floor    KIM TURNER        C. LARSON
San Francisco, CA 94105

| DATE: *(Fecha)* NOV 0 2 2007 | Clerk, by *(Secretario)* C. LARSON | , Deputy *(Adjunto)* |
|---|---|---|

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

SEAL

1. [ ] as an individual defendant.
2. [ ] as the person sued under the fictitious name of *(specify):*
3. [✓] on behalf of *(specify):* WORLDWATER & SOLAR TECHNOLOGIES CORP.

    under: [ ] CCP 416.10 (corporation)    [ ] CCP 416.60 (minor)
           [ ] CCP 416.20 (defunct corporation)  [ ] CCP 416.70 (conservatee)
           [ ] CCP 416.40 (association or partnership)  [ ] CCP 416.90 (authorized person)
           [ ] other *(specify):*
4. [ ] by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. January 1, 2004]



Legal Solutions Plus

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465

DGR - THE SOURCE FOR
LEGAL SUPPORT
47 BLOOMFIELD AVE.
CALDWELL NJ  07006
973-403-1700

Work Order No.: 421992
DATE: 11/05/07

CLIENT No.: COU04
FIRM: COUNTY LEGAL & NOTARY SERVI
ATTORNEY
REPRESENTS:
PHONE: 408-295-2700
CONTACT: ROBINA ALVES
FILE No.: ANDERSON VS. WORLDWATER

COURT: SUPERIOR COURT OF
CALIFORNIA
CASE #: CV075201
TITLE: ANDERSON VS. WORLDWATER

==================================================================
*** WORK ORDER ***

Work Order No.421992
SERVER: SHERRIE GIBBLE

SERVE: WORLDWATER & SOLAR
TECHNOLOGIES CORP., A DELAWARE CORPORATION, FORMERLY KNOWN
AS WORLDWATER & POWER CORP., A DELAWARE CORPORATION

HOME: UNKNOWN                    BUSINESS NAME:

                                 200 LUDLOW DR.
PHONE:
                                 EWING          NJ  08638
                    PHONE:
AGENT:
TITLE:
DOCUMENTS:
  SUMMONS & COMPLAINT
  THOMAS ANDERSON,
  WORLDWATER & SOLAR TECHNOLOGIES CORP.,

                                 WITNESS FEES $ _____

SPECIAL INSTRUCTIONS: RUSH.  PLEASE ATTEMPT THIS TODAY, 11/05 ON
QUENTIN T. KELLY PERSONALLY OR ON AN OFFICER
OR MANAGER OR ANYONE AUTHORIZED TO ACCEPT

HEARING                  LAST DATE                 LAST DATE
DATE                     TO SUB/SERVE              TO SERVE 11/05/07
==================================================================
** SERVICE INFORMATION **
Date Served___/___/___ Time Served___:___AM/PM Personal__ Sub__ Not Served__

Served On:_____ Title/Relation:_____

Age_____ HT_____ WT_____ Hair_____ Sex_____ Race_____ Other_____

IS THIS SUBJECT CURRENTLY SERVING IN THE ARMED FORCES?_____YES _____NO

IF YES, BRANCH OF MILITARY: _____

Attempts:_____        Date Mailed:_____
                                         Proof Code:_____

                                     Server:_____
Accepted By:_____  DATE:_____
Telephone #:_____

related to wo # 421993
Summons
complaint
Civil case cover sheet (1)
ADR Information Form (1)
Stip to Use ADR
Notice of Case Mant Conf.
Civil Trial Delay
Ex Parte App. for Extending Time
Case Mant St out or Modification of stay
Notice of ... Termin. ... Notice of Agreement to Non-Appear...

  

**SUPERIOR COURT OF CALIFORNIA**
**County of Marin**
P.O. Box 4988
San Rafael, CA 94913-4988

**FILED**

NOV 0 2 2007

KIM TURNER, Court Executive Officer
MARIN COUNTY SUPERIOR COURT
By: C. Larson, Deputy

---

PLAINTIFF: *Thomas Anderson*

vs.

DEFENDANT: *Worldwater & Solar Technologies Corp*

CASE NO. *CV075201*

**NOTICE OF CASE MANAGEMENT CONFERENCE (CIVIL)**

---

This case is subject to the Trial Court Delay Reduction Act, Government Code § 68600 et seq., and Civil Rules of the Uniform Local Rules of the Marin County Superior Court (hereafter MCSC – Civil Rules).

Pursuant to CRC 213, this case is assigned to Judge *Dunyee*, Department *L*. This assignment is for all purposes.

MCSC Civil Rule 1.23 and CRC 201.7(b) and 201.9(c) requires that the Summons and Complaint, a copy of this notice, a blank Case Management Conference Statement form, and an ADR information package be served and that Proof of Service be filed within 60 days of the filing date of this Complaint. CRC 201.7(d) requires that defendants file responsive pleadings within 30 days of service, unless the parties stipulate to an extension of not more than 15 days.

1. IT IS ORDERED that the parties/counsel to this action shall:

   a. Comply with the filing and service deadlines in MCSC Civil Rules 1.23 and CRC 201.7, or APPEAR IN PERSON at the Order to Show Cause hearing on the dates set forth below:

   Hearing on Failure to File Proof of Service     *1/16/08*     9:00 A.M.

   Hearing on Failure to Answer     *2/15/08*     9:00 A.M.

   b. Appear for a Case Management Conference on     *3/28/08*     9:00 A.M.

2. Telephonic appearance at Case Management Conference may be available by contacting COURT CALL, an independent vendor, not less than 5 court days before the hearing date. Parties may make arrangements by calling (888) 882-6878. This service is subject to charges by the vendor.

3. You must be familiar with the case and be fully prepared to discuss the suitability of the case for binding or non-binding arbitration, mediation, or neutral case evaluation. **Counsel must discuss ADR options with their clients prior to attending the CMC** and should be prepared to discuss with the court their authority to participate in ADR.

4. Case Management Conference Statements must be filed and served on all parties, including the Court, at least 15 calendar days before the CMC. **(A $49.00 sanction will be charged for late filing of a statement.)**

   **Case Management Statement must be filed by** *3/13/08*

5. All Law and Motion matters will be heard on the calendar of the assigned Judge. Tentative Rulings may be obtained by calling (415) 473-7545 from 2:00 p.m. to 4:30 p.m. the court day preceding the scheduled hearing.

---

# EXHIBIT C

1   LATHAM & WATKINS LLP
       Kenneth M. Fitzgerald (Bar No. 142505)
2      Robert S. Huie (Bar No. 237374)
    600 West Broadway, Suite 1800
3   San Diego, California  92101-3375
    Telephone:  1.619.236.1234
4   Facsimile:  1.619.696.7419

5   Attorneys for Defendants
    WorldWater & Solar Technologies Corp.
6   and Quentin Kelly

7

8                    SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                                    COUNTY OF MARIN

10

11  THOMAS ANDERSON,                         | CASE NO. CV 075201

12                  Plaintiff,               | Action Filed:  November 2, 2007
                                             | Assigned To:  Hon. Lynn Duryee
13          v.                               | Dept.:  L

14  WORLDWATER & SOLAR                       | **NOTICE TO ADVERSE PARTY OF**
    TECHNOLOGIES CORP., a Delaware           | **REMOVAL TO FEDERAL COURT**
15  corporation, formerly known as
    WORLDWATER & POWER CORP., a
16  Delaware Corporation; QUENTIN T.
    KELLY, an individual; and DOES 1 through
17  20, inclusive,

18                  Defendants.

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINSᴸᴸᴾ  SD\613852.1
ᴀᴛᴛᴏʀɴᴇʏs ᴀᴛ ʟᴀᴡ
  sᴀɴ ᴅɪᴇɢᴏ
                                                        CASE NO. CV 075201
                                       NOTICE TO ADVERSE PARTY OF REMOVAL TO
                                                           FEDERAL COURT

1        TO PLAINTIFF AND HIS ATTORNEYS OF RECORD:

2           PLEASE TAKE NOTICE that a Notice of Removal of this action was filed in the

3 United States District Court for the Northern District of California on December 17, 2007. A

4 copy of said Notice of Removal is attached to this Notice, and is served and filed herewith.

5

6 Dated: December 17, 2007

7                               LATHAM & WATKINS LLP

8                                Kenneth M. Fitzgerald
                                  Robert S. Huie

9

10                      By        _____

11                        Robert S. Huie
                        Attorneys for Defendants

12                        WorldWater & Solar Technologies Corp.
                        and Quentin Kelly

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2

LATHAM&WATKINS<sub>LLP</sub>
ATTORNEYS AT LAW
SAN DIEGO    SD\613852.1

CASE NO. CV 075201
NOTICE TO ADVERSE PARTY OF REMOVAL TO
FEDERAL COURT