

1    LATHAM & WATKINS LLP
        Kenneth M. Fitzgerald (Bar No. 142505)
2       Email: Kenneth.Fitzgerald@lw.com
        Robert S. Huie (Bar No. 237374)
3       Email: Robert.Huie@lw.com
     600 West Broadway, Suite 1800
4    San Diego, California 92101-3375
     Telephone: 1.619.236.1234
5    Facsimile: 1.619.696.7419

6    Attorneys for Defendant and Counterclaimant
     WorldWater & Solar Technologies Corp. and
7    Defendant Quentin T. Kelly

8                     UNITED STATES DISTRICT COURT

9         NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION

10

11
     THOMAS ANDERSON,                          CASE NO. 07 CV 6372 EMC
12
                    Plaintiff,                 **ANSWER AND COUNTERCLAIM**
13
            v.                                 DEMAND FOR JURY TRIAL
14
     WORLDWATER & SOLAR                         Action removed: December 16, 2007
15   TECHNOLOGIES CORP., a Delaware             Assigned to Hon. Edward M. Chen
     corporation, formerly known as
16   WORLDWATER & POWER CORP., a
     Delaware corporation; QUENTIN T. KELLY,
17   an individual; and DOES 1 through 20,
     inclusive,
18
                    Defendants.
19

20   WORLDWATER & SOLAR
     TECHNOLOGIES CORP., a Delaware
21   corporation,

22                  Counterclaimant,

23          v.

24   THOMAS ANDERSON, an individual,

25                  Counterdefendant.

26

27

28

## **ANSWER**

Defendants WorldWater & Solar Technologies Corp. ("WorldWater") and Quentin T. Kelly ("Kelly") (collectively, "Defendants") hereby answer the complaint of plaintiff Thomas Anderson ("Plaintiff") as follows:

1.    In answer to the allegations of Paragraph 1 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

2.    Defendants admit the allegations of Paragraph 2 of the Complaint.

3.    Defendants admit the allegations of Paragraph 3 of the Complaint.

4.    In answer to the allegations of Paragraph 4 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

5.    In answer to the allegations of Paragraph 5 of the Complaint, Defendants deny each and every allegation.

6.    Defendants admit the allegations of Paragraph 6 of the Complaint.

7.    In answer to the allegations of Paragraph 7 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

8.    In answer to the allegations of Paragraph 8 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

9.    In answer to the allegations of Paragraph 9 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

10.    In answer to the allegations of Paragraph 10 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\613857.1

1

CASE NO. 07 CV 6372 EMC
ANSWER AND COUNTERCLAIM

1      11.    In answer to the allegations of Paragraph 11 of the Complaint, Defendants

2  lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that

3  basis Defendants deny each and every allegation.

4      12.    In answer to the allegations of Paragraph 12 of the Complaint, Defendants

5  admit that on or about February 5, 2003, in the City of Mill Valley, Marin County, California,

6  Anderson and WorldWater entered into the Letter Agreement, wherein Anderson agreed to act as

7  WorldWater's marketing representative, including in the "winery industry" in the State of

8  California.  A true and correct copy of the Letter Agreement is attached as Exhibit A to

9  Plaintiff's complaint.  Except as expressly so admitted, Defendants deny each and every

10  allegation.

11      13.    In answer to the allegations of Paragraph 13 of the Complaint, Defendants

12  lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that

13  basis Defendants deny each and every allegation.

14      14.    In answer to the allegations of Paragraph 14 of the Complaint, Defendants

15  lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that

16  basis Defendants deny each and every allegation.

17      15.    In answer to the allegations of Paragraph 15 of the Complaint, Defendants

18  lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that

19  basis Defendants deny each and every allegation.

20      16.    In answer to the allegations of Paragraph 16 of the Complaint, Defendants

21  lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that

22  basis Defendants deny each and every allegation.

23      17.    In answer to the allegations of Paragraph 17 of the Complaint, Defendants

24  lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that

25  basis Defendants deny each and every allegation.

26      18.    In answer to the allegations of Paragraph 18 of the Complaint, Defendants

27  lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that

28  basis Defendants deny each and every allegation.

19.     In answer to the allegations of Paragraph 19 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

20.     In answer to the allegations of Paragraph 20 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

21.     In answer to the allegations of Paragraph 21 of the Complaint, Defendants deny each and every allegation.

22.     In answer to the allegations of Paragraph 22 of the Complaint, Defendants deny each and every allegation.

23.     In answer to the allegations of Paragraph 23 of the Complaint, Defendants deny each and every allegation.

24.     In answer to the allegations of Paragraph 24 of the Complaint, Defendants deny each and every allegation.

25.     In answer to the allegations of Paragraph 25 of the Complaint, Defendants deny each and every allegation.

26.     In answer to the allegations of Paragraph 26 of the Complaint, Defendants deny each and every allegation.

27.     In answer to the allegations of Paragraph 27 of the Complaint, Defendants admit that Anderson and WorldWater entered into the Letter Agreement. Except as expressly so admitted, Defendants deny each and every allegation.

28.     In answer to the allegations of Paragraph 28 of the Complaint, Defendants deny each and every allegation.

29.     In answer to the allegations of Paragraph 29 of the Complaint, Defendants deny each and every allegation.

30.     In answer to the allegations of Paragraph 30 of the Complaint, Defendants deny each and every allegation.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\613857.1

3

CASE NO. 07 CV 6372 EMC
ANSWER AND COUNTERCLAIM

1          31.     In answer to the allegations of Paragraph 31 of the Complaint, Defendants

2    deny each and every allegation.

3          32.     In answer to the allegations of Paragraph 32 of the Complaint, Defendants

4    admit that the Letter Agreement contains an implied covenant of good faith and fair dealing.

5    Except as expressly so admitted, Defendants deny each and every allegation.

6          33.     In answer to the allegations of Paragraph 33 of the Complaint, Defendants

7    deny each and every allegation.

8          34.     In answer to the allegations of Paragraph 34 of the Complaint, Defendants

9    deny each and every allegation.

10          35.     In answer to the allegations of Paragraph 35 of the Complaint, Defendants

11   deny each and every allegation.

12          36.     In answer to the allegations of Paragraph 36 of the Complaint, Defendants

13   deny each and every allegation.

14          37.     In answer to the allegations of Paragraph 37 of the Complaint, Defendants

15   deny each and every allegation.

16          38.     In answer to the allegations of Paragraph 38 of the Complaint, Defendants

17   deny each and every allegation.

18          39.     In answer to the allegations of Paragraph 39 of the Complaint, Defendants

19   deny each and every allegation.

20          40.     In answer to the allegations of Paragraph 40 of the Complaint, Defendants

21   deny each and every allegation.

22          41.     In answer to the allegations of Paragraph 41 of the Complaint, Defendants

23   deny each and every allegation.

24          42.     In answer to the allegations of Paragraph 42 of the Complaint, Defendants

25   deny each and every allegation.

26          43.     In answer to the allegations of Paragraph 43 of the Complaint, Defendants

27   deny each and every allegation.

28

44.     In answer to the allegations of Paragraph 44 of the Complaint, Defendants deny each and every allegation.

45.     In answer to the allegations of Paragraph 45 of the Complaint, Defendants deny each and every allegation.

46.     In answer to the allegations of Paragraph 46 of the Complaint, Defendants deny each and every allegation.

47.     In answer to the allegations of Paragraph 47 of the Complaint, Defendants deny each and every allegation.

48.     In answer to the allegations of Paragraph 48 of the Complaint, Defendants deny each and every allegation.

49.     In answer to the allegations of Paragraph 49 of the Complaint, Defendants deny each and every allegation.

50.     In answer to the allegations of Paragraph 50 of the Complaint, Defendants deny each and every allegation.

51.     In answer to the allegations of Paragraph 51 of the Complaint, Defendants deny each and every allegation.

52.     In answer to the allegations of Paragraph 52 of the Complaint, Defendants deny each and every allegation.

53.     In answer to the allegations of Paragraph 53 of the Complaint, Defendants deny each and every allegation.

54.     In answer to the allegations of Paragraph 54 of the Complaint, Defendants deny each and every allegation.

55.     In answer to the allegations of Paragraph 55 of the Complaint, Defendants deny each and every allegation.

56.     In answer to the allegations of Paragraph 56 of the Complaint, Defendants deny each and every allegation.

57.     In answer to the allegations of Paragraph 57 of the Complaint, Defendants deny each and every allegation.

58.    In answer to the allegations of Paragraph 58 of the Complaint, Defendants deny each and every allegation.

59.    In answer to the allegations of Paragraph 59 of the Complaint, Defendants deny each and every allegation.

60.    In answer to the allegations of Paragraph 60 of the Complaint, Defendants deny each and every allegation.

61.    In answer to the allegations of Paragraph 61 of the Complaint, Defendants deny each and every allegation.

62.    In answer to the allegations of Paragraph 62 of the Complaint, Defendants deny each and every allegation.

63.    In answer to the allegations of Paragraph 63 of the Complaint, Defendants deny each and every allegation.

64.    In answer to the allegations of Paragraph 64 of the Complaint, Defendants deny each and every allegation.

65.    In answer to the allegations of Paragraph 65 of the Complaint, Defendants deny each and every allegation.

66.    In answer to the allegations of Paragraph 66 of the Complaint, Defendants deny each and every allegation.

67.    In answer to the allegations of Paragraph 67 of the Complaint, Defendants deny each and every allegation.

68.    In answer to the allegations of Paragraph 68 of the Complaint, Defendants deny each and every allegation.

69.    In answer to the allegations of Paragraph 69 of the Complaint, Defendants deny each and every allegation.

70.    In answer to the allegations of Paragraph 70 of the Complaint, Defendants deny each and every allegation.

71.    In answer to the allegations of Paragraph 71 of the Complaint, Defendants deny each and every allegation.

72.     In answer to the allegations of Paragraph 72 of the Complaint, Defendants deny each and every allegation.

73.     In answer to the allegations of Paragraph 73 of the Complaint, Defendants deny each and every allegation.

74.     In answer to the allegations of Paragraph 74 of the Complaint, Defendants deny each and every allegation.

75.     In answer to the allegations of Paragraph 75 of the Complaint, Defendants deny each and every allegation.

76.     In answer to the allegations of Paragraph 76 of the Complaint, Defendants deny each and every allegation.

77.     In answer to the allegations of Paragraph 77 of the Complaint, Defendants deny each and every allegation.

78.     In answer to the allegations of Paragraph 78 of the Complaint, Defendants deny each and every allegation.

79.     In answer to the allegations of Paragraph 79 of the Complaint, Defendants deny each and every allegation.

80.     In answer to the allegations of Paragraph 80 of the Complaint, Defendants deny each and every allegation.

81.     In answer to the allegations of Paragraph 81 of the Complaint, Defendants lack information sufficient to form a belief as to the truth of Plaintiff's allegations, and on that basis Defendants deny each and every allegation.

82.     Defendants admit the allegations of Paragraph 82 of the Complaint.

83.     In answer to the allegations of Paragraph 83 of the Complaint, Defendants deny each and every allegation.

84.     In answer to the allegations of Paragraph 84 of the Complaint, Defendants deny each and every allegation.

85.     In answer to the allegations of Paragraph 85 of the Complaint, Defendants deny each and every allegation.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO
SD\613857.1
7
CASE NO. 07 CV 6372 EMC
ANSWER AND COUNTERCLAIM

## **AFFIRMATIVE DEFENSES**

### First Affirmative Defense

(Failure to State a Claim – All Causes of Action)

1. Plaintiff's Complaint and each cause of action alleged therein fail to state a cause of action.

### Second Affirmative Defense

(Breach – All Causes of Action)

2. Any obligations owing Plaintiff under his Letter Agreement were discharged by his failure to perform his obligations under that Letter Agreement, and his material breaches of that Letter Agreement.

### Third Affirmative Defense

(Ratification – All Causes of Action)

3. Plaintiff's Complaint and each cause of action alleged therein lack merit because Defendants' actions were ratified by Plaintiff.

### Fourth Affirmative Defense

(Estoppel – All Causes of Action)

4. By reason of Plaintiff's conduct, his purported claims for relief, and each of them, are barred in whole or in part by the doctrine of estoppel.

### Fifth Affirmative Defense

(Waiver – All Causes of Action)

5. By reason of Plaintiff's conduct, his purported claims for relief, and each of them, are barred in whole or in part by the doctrine of waiver.

### Sixth Affirmative Defense

(Laches – All Causes of Action)

6. By reason of Plaintiff's conduct, his purported claims for relief, and each of them, are barred in whole or in part by the doctrine of laches.

### Seventh Affirmative Defense

(Unclean Hands – All Causes of Action)

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\613857.1

8

CASE NO. 07 CV 6372 EMC
ANSWER AND COUNTERCLAIM

1    7.    By reason of Plaintiff's conduct, his purported claims for relief, and each

2  of them, are barred in whole or in part by the doctrine of unclean hands.

3                              Eighth Affirmative Defense

4                        (Failure to Mitigate – All Causes of Action)

5    8.    Plaintiff is barred from recovery against Defendants because, although

6  under a duty to do so, he unreasonably failed, in whole or in part, to mitigate any damages

7  alleged.

8                                  **COUNTERCLAIM**

9          Defendant and Counterclaimant WorldWater & Solar Technologies Corp.

10  ("WorldWater") alleges for its Counterclaim against Thomas Anderson ("Anderson") as follows:

11                                      PARTIES

12    1.    WorldWater is a Delaware corporation with its principal place of business

13  in Ewing, New Jersey.

14    2.    Anderson is a resident, domiciliary, and citizen of Marin County,

15  California.

16                              JURISDICTION AND VENUE

17    3.    This Court has personal jurisdiction over Anderson, an individual residing

18  in this County.

19    4.    This Court has subject matter jurisdiction over WorldWater's

20  Counterclaim pursuant to 28 U.S.C. § 1332(a), in that the parties are citizens of different states,

21  and the amount in controversy exceeds $75,000, exclusive of interest and costs.

22    5.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(a), in that

23  Anderson resides in this State and in this District.

24                              GENERAL ALLEGATIONS

25    6.    WorldWater is an international solar engineering and water management

26  company and a supplier of solar electricity, with unique, high-powered solar technology

27  providing solutions to water supply and energy problems.  In addition to supplying solar

28  electricity, the company has developed patented solar electric systems capable of operating

1   pumps and motors for irrigation, refrigeration and cooling, and water utilities.

2   <u>Anderson Agrees to Be WorldWater's Marketing Representative</u>

3           7.      On or about February 5, 2003, WorldWater entered into a Letter

4   Agreement with Anderson, wherein Anderson agreed to act as WorldWater's marketing

5   representative.  The position of marketing representative was an exclusive, independent

6   contractor relationship with WorldWater, such that the representative could not work with or for

7   any other solar equipment companies.

8           8.      Under the Letter Agreement, Anderson was to focus his energies on the

9   winery industry throughout the State of California.  However, the Letter Agreement expressly

10  contemplated that WorldWater would ask Anderson to participate in sales or projects for

11  WorldWater other than those involving his designated market.

12          9.      Anderson's Letter Agreement expressly recognized the "representation

13  status" between Anderson and WorldWater, and Anderson promised therein "to kept confidential

14  any and all confidential or non-public Company documents, trade secrets and other information

15  including, but not limited to, patent work, engineering drawings, product designs, R&D results,

16  client lists, pricing strategy, product cost data, proprietary technical information, corporate

17  policies and procedures, and corporate marketing and financial plans and strategies."

18  <u>Anderson and Thomas O'Brien Conspire to Misappropriate Trade Secrets</u>

19          10.     At the time Anderson entered into his Letter Agreement with WorldWater,

20  WorldWater employed, as a Regional Sales Manager, one Thomas O'Brien ("O'Brien").

21          11.     WorldWater had first employed O'Brien on or about July 31, 2001.

22  O'Brien is a convicted felon, who had been incarcerated in federal prison for insurance fraud

23  before obtaining his job with WorldWater.  Anderson and O'Brien first met in or about the end

24  of 2001.  In 2002, Anderson accompanied O'Brien on certain outside sales calls that O'Brien

25  undertook on behalf of WorldWater.

26          12.     As Regional Sales Manager for WorldWater, O'Brien was expected to

27  work full-time for WorldWater, marketing and selling the company's solar water pumps and

28  solar electric equipment throughout California.  Part of O'Brien's sales duties included preparing

1  and submitting competitive bids to potential customers on their construction projects.  To prepare

2  these bids, O'Brien would gather the technical specifications for the proposed project, then work

3  with other WorldWater personnel to develop competitive pricing based on these specifications.

4  O'Brien was then responsible for submitting this bid to the potential customer and following up

5  on any additional requests or questions.

6          13.    The proposals and pricing information that O'Brien developed and

7  integrated into WorldWater's bids were highly confidential.  If a competing company learned of

8  WorldWater's pricing for a project, that competitor could unfairly compete with WorldWater by

9  under-bidding WorldWater.

10          14.    Like Anderson, O'Brien owed a duty to WorldWater to keep this

11  confidential information secret.  O'Brien entered into two employment agreements with

12  WorldWater during the course of his employment, both of which contained confidentiality

13  provisions.  The agreement dated January 1, 2003 stated that "[d]uring and for a period of one

14  year after your employment with WorldWater, you agree to keep confidential any and all

15  confidential and non-public Company documents, trade secrets and other information including,

16  but not limited to, . . . pricing strategy, product cost data . . . and corporate marketing and

17  financial plans and strategies."  The agreement dated September 1, 2004 contained virtually

18  identical language.

19          15.    During the course of his employment with WorldWater, and without

20  WorldWater's knowledge, authorization or consent, O'Brien disclosed the confidential

21  competitive pricing that he and other WorldWater personnel developed for project bids to

22  multiple third parties.  O'Brien worked with these third parties to draft competing lower bids to

23  be submitted by competing companies.

24          16.    On information and belief, Anderson, while working as a marketing

25  representative for WorldWater, was or became aware of O'Brien's unauthorized disclosure of

26  confidential competitive pricing to third parties.  On information and belief, Anderson agreed

27  and intended that O'Brien make such unauthorized disclosures, in furtherance of a conspiracy

28  with O'Brien to misappropriate trade secrets and unlawfully compete with WorldWater.

17.    Specifically, O'Brien misappropriated WorldWater's trade secrets and competed unfairly with WorldWater, and on information and belief Anderson knew about, intended, and agreed to such misappropriation, as follows:

a.    WorldWater is informed and believes, and on that basis alleges, that in or about May 2003, without WorldWater's knowledge, authorization or consent, O'Brien disclosed WorldWater's confidential proposal and pricing information for the Belmont Country Club project in Fresno, California to a third party.  The documents containing this confidential pricing information were clearly marked "WORLDWATER CONFIDENTIAL" and contained the notation that "Information contained herein is proprietary to WorldWater® Corporation."

b.    WorldWater is informed and believes, and on that basis alleges, that in or about October 2003, without WorldWater's knowledge, authorization or consent, O'Brien instructed Rick Underwood, a WorldWater Manufacturer's Representative recruited and supervised by O'Brien, to disclose WorldWater's confidential proposal and pricing information for the Kelsey Ranch project in Merced, California to a representative of Five Star Energy Corporation ("Five Star"), a competing company.  The documents containing this confidential pricing information were clearly marked "WORLDWATER CONFIDENTIAL" and contained the notation that "Information contained herein is proprietary to WorldWater® Corporation." Five Star subsequently submitted a bid on the Kelsey Ranch project on November 13, 2003 for approximately $40,000 below WorldWater's bid.

c.    WorldWater is informed and believes, and on that basis alleges, that in or about November 2003, without WorldWater's knowledge, authorization or consent, O'Brien communicated with representatives from Five Star, orally and via email, about drafting a proposal for a "1MW in Bakersfield" for "DC panels." O'Brien disclosed WorldWater's pricing on this project to these representatives for the purpose of permitting Five Star to prepare a proposal that was lower than this price.

d.    WorldWater is informed and believes, and on that basis alleges, that on or about December 8, 2003, O'Brien, in his capacity as WorldWater's sales representative and employee, received a Request for Proposal from Semitropic Water Storage

1    District in Wasco, California, for a solar generation facility.  Without WorldWater's knowledge,

2    authorization or consent, O'Brien provided this Request for Proposal to a third party for the

3    purpose of creating a competing proposal for Five Star, in exchange for a substantial commission

4    should Five Star win the project.  Five Star subsequently submitted a competing bid to

5    Semitropic on December 12, 2003 for that project.

6            e.    WorldWater is informed and believes, and on that basis alleges,

7    that on or about June 11, 2004, without WorldWater's knowledge, authorization or consent,

8    O'Brien disclosed WorldWater's confidential pricing information for the Hidden Valley Ranch

9    project in Ramona, California to a third party.  The documents containing this confidential

10   pricing information were clearly marked "CONFIDENTIAL."  O'Brien disclosed this trade

11   secret for the purpose of creating a competing bid for O'Brien's own benefit.

12           f.    WorldWater is informed and believes, and on that basis alleges,

13   that in or about June 2004, O'Brien, in his capacity as WorldWater's sales representative and

14   employee, received a Request for Proposal from Ross Valley School District in San Anselmo,

15   California for a photovoltaic generation system.  Without WorldWater's knowledge,

16   authorization or consent, O'Brien provided this Request for Proposal to a third party for the

17   purpose of creating a competing proposal for O'Brien's own benefit.

18           g.    WorldWater is informed and believes, and on that basis alleges,

19   that in or about June 2004, without WorldWater's knowledge, authorization or consent, O'Brien

20   disclosed WorldWater's confidential proposal and pricing information for the Encinitas Ranch

21   Golf Course project in Encinitas, California to a third party.  The documents containing this

22   confidential pricing information were clearly marked "WORLDWATER CONFIDENTIAL."

23   O'Brien disclosed this trade secret for the purpose of creating a competing bid for O'Brien's own

24   benefit.

25           h.    WorldWater is informed and believes, and on that basis alleges,

26   that in or about February 2005, O'Brien participated in preparing and submitting a bid for

27   WorldWater on the Road Runner Tree Farms project in Borrego Springs, California.  Without

28   WorldWater's knowledge, authorization or consent, O'Brien shared this bid information with his

1   competing company, as described below, which then submitted a competing bid for this project

2   on February 17, 2005.

3             <u>Anderson and O'Brien Conspire to Surreptitiously Compete with WorldWater</u>

4         18.      Beginning in or about May 2004, during the course of his employment

5   with WorldWater, and without WorldWater's knowledge, authorization or consent, O'Brien

6   began working for a competing solar company called RESO International ("RESO"), of which

7   O'Brien was a part owner.  O'Brien solicited customers for projects with RESO without

8   notifying WorldWater of the existence of or potential for business with those customers.

9         19.      On information and belief, Anderson was aware of O'Brien's

10   unauthorized solicitation of customers on behalf of RESO.  On information and belief, Anderson

11   agreed and intended that O'Brien make such unauthorized disclosures, in furtherance of their

12   conspiracy and mutual economic interests.

13         20.      Specifically, O'Brien interacted with customers on behalf of RESO

14   without WorldWater's knowledge or consent as follows:

15              a.      In early 2005, O'Brien, on behalf of RESO, met with Richard

16   Arias of AgSupply to discuss replacing WorldWater with RESO as the solar equipment supplier

17   on the Farm ACW project.

18              b.      In or about May 2005, O'Brien, on behalf of RESO, worked with

19   SEE Solar Systems to bid on the Ayres Hotels project.

20              c.      In late 2004 and early 2005, O'Brien and RESO were bidding on

21   several car wash projects throughout California.

22         21.      On information and belief, Anderson, despite being WorldWater's

23   marketing representative, secretly provided services and assistance to WorldWater's competitor

24   RESO.  For example, in or about February 2005, Anderson, through an entity known as SSA

25   Capital, undertook efforts to obtain financing for RESO on numerous several solar energy

26   projects relating to G.J. Electric, a solar energy installer.

27         22.      In or about June 2005, WorldWater learned of O'Brien's misappropriation

28   of its confidential pricing information and his efforts to compete directly with WorldWater, and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN DIEGO

SD\613857.1

14

CASE NO. 07 CV 6372 EMC
ANSWER AND COUNTERCLAIM

1    promptly terminated O'Brien's employment.

2         23.    In late 2006 and early 2007, in the course of legal proceedings between

3    WorldWater and O'Brien, WorldWater first became aware of Anderson's involvement with

4    O'Brien and RESO.  At the time of WorldWater's discovery of this information, Anderson had

5    ceased to be a marketing representative of WorldWater.

6                        FIRST COUNTERCLAIM

7                      (Breach of the Letter Agreement)

8         24.    WorldWater realleges and incorporates by reference paragraphs 1 through

9    23.

10        25.    As alleged herein, Anderson entered into a written Letter Agreement with

11   WorldWater.

12        26.    The Letter Agreement expressly recognized the "representation status"

13   between Anderson and WorldWater, and Anderson agreed "to kept confidential any and all

14   confidential or non-public Company documents, trade secrets and other information including,

15   but not limited to, patent work, engineering drawings, product designs, R&D results, client lists,

16   pricing strategy, product cost data, proprietary technical information, corporate policies and

17   procedures, and corporate marketing and financial plans and strategies."

18        27.    WorldWater fully performed its obligations under its Employment

19   Agreement with Anderson, and all conditions required for Anderson's performance have

20   occurred.

21        28.    By his wrongful conduct as described herein, including by conspiring with

22   O'Brien to compete with WorldWater and to misappropriate WorldWater's trade secrets and

23   confidential information, Anderson breached the terms of the Letter Agreement.

24        29.    As a direct and proximate result of said breach, WorldWater has been

25   damaged in an amount in excess of $75,000, exclusive of interest and costs, in an exact amount

26   to be determined at trial.

27                       SECOND COUNTERCLAIM

28               (Breach of the Covenant of Good Faith and Fair Dealing)

30. WorldWater realleges and incorporates by reference paragraphs 1 through 29.

31. As alleged herein, Anderson entered into a written Letter Agreement with WorldWater.

32. The Letter Agreement executed by Anderson contained an implied covenant of good faith and fair dealing whereby Anderson promised to perform his contractual obligations in good faith and to refrain from taking any action that would deprive WorldWater of the benefits of the bargain.

33. WorldWater fully performed its obligations under its Employment Agreement with Anderson, and all conditions required for Anderson's performance have occurred.

34. By his wrongful conduct as described herein, Anderson unfairly interfered with WorldWater's right to receive the benefits of his Employment Agreement, and violated the covenant of good faith and fair dealing.

35. As a direct and proximate result of said breach, WorldWater has been damaged in an amount in excess of $75,000, exclusive of interest and costs, in an exact amount to be determined at trial.

### THIRD COUNTERCLAIM

(Breach of Fiduciary Duty)

36. WorldWater realleges and incorporates by reference paragraphs 1 through 35.

37. As set forth herein, Anderson agreed to act as marketing representative for WorldWater and preserve its confidential information. Pursuant to the Letter Agreement, WorldWater engaged Anderson in a position of trust and confidence, and WorldWater entrusted Anderson with WorldWater's confidential, proprietary, and trade secret information. While so engaged, Anderson was under a fiduciary duty of loyalty to act solely for the benefit of WorldWater and not contrary to WorldWater's interests with respect to all matters connected to his role as marketing representative or the business of WorldWater.

38.   While so employed in this position of trust and confidence, Anderson breached his fiduciary duty of loyalty to WorldWater by conspiring with O'Brien to misappropriate WorldWater's trade secrets and unfairly compete against WorldWater.

39.   As a direct and proximate result of Anderson's breach of fiduciary duty, WorldWater has been damaged in an amount in excess of $75,000, exclusive of interest and costs, in an exact amount to be determined at trial.

40.   In committing this breach of fiduciary duty as described above, Anderson acted with malice and oppression, and an award of punitive damages in an amount appropriate to punish and deter him from engaging in similar misconduct in the future.

## FOURTH COUNTERCLAIM

(Conspiracy to Breach of Fiduciary Duty)

41.   WorldWater realleges and incorporates by reference paragraphs 1 through 40.

42.   From January 2003 until July 2005, WorldWater employed O'Brien in a position of trust and confidence as a regional sales manager. While so employed, O'Brien was under a fiduciary duty of loyalty to act solely for the benefit of WorldWater and not contrary to WorldWater's interests with respect to all matters connected with this employment relationship.

43.   While so employed in this position of trust and confidence, O'Brien breached his fiduciary duty of loyalty to WorldWater by misappropriating WorldWater's trade secrets and unfairly competing against WorldWater.

44.   As set forth herein, on information and belief, Anderson knew about, intended, agreed, and conspired with O'Brien in the breach of both O'Brien and Anderson's fiduciary duties to WorldWater.

45.   As a direct and proximate result of Anderson's conspiracy with O'Brien, WorldWater has been damaged in an amount in excess of $75,000, exclusive of interest and costs, in an exact amount to be determined at trial.

46.   In engaging in the conspiracy as described above, Anderson acted with malice and oppression, and an award of punitive damages in an amount appropriate to punish

1  and deter him from engaging in similar misconduct in the future.

2  FIFTH COUNTERCLAIM

3  (Conspiracy to Misappropriate Trade Secrets)

4       47.    WorldWater realleges and incorporates by reference paragraphs 1 through

5  46.

6       48.    WorldWater's competitive proposals and pricing information are trade

7  secrets as defined in California Civil Code § 3426.1(d) in that WorldWater's competitors can

8  derive economic value from their disclosure, and WorldWater took reasonable steps to maintain

9  their secrecy. These steps included, but were not limited to, marking documents containing these

10  trade secrets as "CONFIDENTIAL" and as WorldWater's "proprietary information" and

11  including a confidentiality provision in employment agreements.

12       49.    O'Brien misappropriated WorldWater's trade secrets in that he disclosed

13  and used WorldWater's proposals and competitive pricing information without WorldWater's

14  express or implied consent. O'Brien knew that he owed a duty to WorldWater as a WorldWater

15  employee and per the express terms of his employment agreements to keep this information

16  secret, yet he improperly used and disclosed this information for his own benefit and personal

17  gain.

18       50.    By engaging in the conduct alleged herein, O'Brien unlawfully

19  misappropriated WorldWater's trade secrets in violation of the Uniform Trade Secret Act,

20  California Civil Code § 3426, et seq.

21       51.    On information and belief, Anderson knew about, intended, agreed, and

22  conspired with O'Brien in O'Brien's misappropriation of confidential and trade secret

23  information belonging to WorldWater.

24       52.    As a direct and proximate result of Anderson's conspiracy with O'Brien,

25  WorldWater has been damaged in an amount in excess of $75,000, exclusive of interest and

26  costs, in an exact amount to be determined at trial.

27       53.    In engaging in the conspiracy as described above, Anderson acted with

28  malice and oppression, and an award of punitive damages in an amount appropriate to punish

1    and deter him from engaging in similar misconduct in the future.

2                           SIXTH COUNTERCLAIM

3                        (Common Law Unfair Competition)

4            54.    WorldWater realleges and incorporates by reference paragraphs 1 through

5    53.

6            55.    As alleged herein, on information and belief, Anderson's acts in

7    conspiring with O'Brien to unlawfully compete with WorldWater and misappropriate

8    WorldWater's confidential and trade secret information constitute unfair competition, in

9    violation of the common law of the State of California.

10           56.    As a direct and proximate result of Anderson's conspiracy with O'Brien,

11   WorldWater has been damaged in an amount in excess of $75,000, exclusive of interest and

12   costs, in an exact amount to be determined at trial.

13           57.    In engaging in the conspiracy as described above, Anderson acted with

14   malice and oppression, and an award of punitive damages in an amount appropriate to punish

15   and deter him from engaging in similar misconduct in the future.

16                          SEVENTH COUNTERCLAIM

17      (Unfair Competition in Violation of California Business and Professions Code § 17200)

18           58.    WorldWater realleges and incorporates by reference paragraphs 1 through

19   57.

20           59.    In engaging in the conduct alleged above, on information and belief,

21   Anderson engaged in unfair business practices, as prohibited by California Business and

22   Professions Code Section 17200, including by conspiring with O'Brien to unlawfully compete

23   with WorldWater and misappropriate WorldWater's confidential and trade secret information.

24           60.    As a direct and proximate result of Anderson's conspiracy with O'Brien,

25   WorldWater has been damaged in an amount in excess of $75,000, exclusive of interest and

26   costs, in an exact amount to be determined at trial.

27                           PRAYER FOR RELIEF

28           WHEREFORE, WorldWater prays for the following relief:

1.    Compensatory damages exceeding $75,000, in an amount to be proven at trial;

2.    Punitive damages in an amount to be proven at trial;

3.    A constructive trust on all revenue and profits realized by Anderson as a result of his wrongful conduct;

4.    An accounting of all revenue and profits derived from Anderson's wrongful conduct;

5.    WorldWater's costs and attorneys' fees;

6.    Any other relief this Court deems just and proper.

**<u>JURY DEMAND</u>**

WorldWater demands a trial by jury on all issues so triable.

Dated:  December 18, 2007                Respectfully submitted,

LATHAM & WATKINS LLP
Kenneth M. Fitzgerald
Robert S. Huie


By _____
Robert S. Huie
Attorneys for Defendant and
Counterclaimant WorldWater & Solar
Technologies Corp. and Defendant Quentin
T. Kelly

## PROOF OF SERVICE

I am employed in the County of San Diego, State of California. I am over the age of 18 years and not a party to this action. My business address is Latham & Watkins LLP, 600 West Broadway, Suite 1800, San Diego, CA 92101-3375.

On **December 18, 2007**, I served the following document described as:

**ANSWER AND COUNTERCLAIM**

by serving a true copy of the above-described document in the following manner:

### BY U.S. MAIL

I am familiar with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service. Under that practice, documents are deposited with the Latham & Watkins LLP personnel responsible for depositing documents with the United States Postal Service; such documents are delivered to the United States Postal Service on that same day in the ordinary course of business, with postage thereon fully prepaid. I deposited in Latham & Watkins LLP' interoffice mail a sealed envelope or package containing the above-described document and addressed as set forth below in accordance with the office practice of Latham & Watkins LLP for collecting and processing documents for mailing with the United States Postal Service:

Robert O. Whyte
Cristina M. Cinco
Christina A. Dondero
NIESAR & WHYTE LLP
90 New Montgomery Street, 9th Floor
San Francisco, CA 94105
Telephone: 415.882.5300
Facsimile: 415.882.5400
Attorneys for Plaintiff Thomas Anderson

I declare that I am employed in the office of a member of the Bar of, or permitted to practice before, this Court at whose direction the service was made and declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **December 18, 2007**, at San Diego, California.

_____
Becky J. Neidhardt